TAYLOR, Judge.
The appellant, Joel Mayfield, was convicted of assault in the third degree and of disorderly conduct. He was sentenced to 12 months in jail on the assault charge, and he was ordered to pay a $500.00 fine and to serve 30 days in jail on the disorderly conduct charge, both sentences to run concurrently.
The state’s evidence tended to show that on November 20, 1990, the victim, Ronald Wright, and the appellant were involved in a fight. The appellant and the victim had once been friends, and a dispute erupted between them concerning money owed the appellant by Wright. While the appellant and Wright were traveling in their vehicles, the appellant bumped Wright’s truck from the rear. Wright stopped to look at the damage, and the appellant drove up and pinned Wright between the vehicles. The appellant then banged Wright’s head against the side of the vehicle several times. When Wright yelled out that his leg was broken, the appellant backed his car away and sped off.
Wright managed to drive himself to the police station to get help to the hospital. Officer Kaylor of the Moulton Police Department went to the scene of the crime after talking with Wright. As he was looking at the appellant’s abandoned truck, the appellant walked up. The appellant was explaining what had happened when an eyewitness approached the officer and the appellant. The eyewitness was telling the officer what happened when the appellant said very loudly and belligerently, “It [was] none of her shit’en business and it was none of her damn business.” The appellant was then taken into police custody. The appellant presents the following issues on appeal.
I
The appellant initially contends that the trial court erred in allowing a state’s witness to testify concerning the appellant’s reputation in the community for truthfulness. The appellant testified in his behalf. The prosecution on rebuttal offered the testimony of two police officers in the community where the appellant lived to state that his general reputation in the community for truthfulness was bad. The appellant contends on appeal that there was not sufficient foundation laid for the testimony to be admitted into evidence.
The following occurred during state’s rebuttal case while Investigator Pruitt of the Moulton Police Department was testifying:
“Q [Prosecutor]: State your name, please, sir.
“A: Ward Pruitt.
“Q: What is your occupation?
“A: Investigator for the City of Moul-ton.
“Q: How long have you worked with the Police Department with the City of Moulton?
“A: Eight years.
“Q: Where do you live, Ward?
“A: About three and a half mile southeast of Moulton.
“Q: All right. Ward, do you know the Defendant, Joel Mayfield’s—
“A: Yes.
“Q: —reputation in the community for truthfulness?
“Mr. Craig [defense counsel]: Object to that Your Honor until he establishes a better predicate.
“Mr. Osborn [Prosecutor]: Judge, I think we have.
“Mr. Craig: He hasn’t told how he knows — how he has been able to acquire his general reputation.
“Mr. Osborn: Judge, I think he can ask him that on cross which will be fine.
“Mr. Craig: Anyway, I object for the grounds stated.
“The Court: All right. I will overrule and let him respond.”
*145 The following occurred during the testimony of Investigator Carraway of the Lawrence County Sheriffs Department:
“Q: How long have you worked for the Sheriffs Department?
“A: Approximately two and a half years.
“Q: Okay. Officer Carraway, do you live in the City of Moulton, the Moulton area?
“A: Yes, I do.
“Q: Do you know the Defendant, Joel Mayfield’s reputation for truthfulness in the community?
“A: Yes, I do.
“Q: Is that reputation good or bad?
“Mr. Craig [Defense Counsel]: Object, Your Honor, again improper predicate, he hadn’t properly established a predicate to give that opinion. I also object to form.
“The Court: I’ll overrule and let him respond if he knows.”
The state argues that this issue was not preserved for our review because defense counsel failed to make a specific objection at trial. The objection “improper predicate” was sufficient to put the trial court on notice of the complained of objection. As this court stated in Jennings v. State, 588 So.2d 540 (Ala.Cr.App.1991):
“ ‘Predicate’ is defined in Random House Dictionary of English Language (2d ed. 1987) as ‘[t]o found or derive, to base.’ Ballentine’s Legal Dictionary (1969) defines predicate as ‘a basis or ground of action, defense, or argument.’ It is often used as a legal term to denote the laying of a foundation for the receiving of materials into evidence. See Taylor v. State, 565 So.2d 1224 (Ala.Cr.App.1990). This objection, coupled with counsel’s further reply ... was sufficient enough to put the court on notice of the fact that counsel was challenging the prosecutor’s procedure of impeaching the appellant with evidence of prior convictions.”
Jennings, 588 So.2d at 541-42.
Generally, evidence of the defendant’s character is not admissible at trial when it is offered to show the accused is of a particular character. C. Gamble, McEl-roy’s Alabama Evidence § 26.01 (4th ed. 1991). However, when a defendant testifies in his own behalf, he has placed his character at issue, and as with any other witness, the state may attempt to impeach his credibility by evidence of bad character. This evidence may be admitted by proof of the defendant’s general reputation in the community as a whole, or his general reputation in the community as to his truth or veracity. McElroy’s § 140.01. “This exception to the general exclusionary rule has ... strict limitations ... the impeaching attorney must lay a foundation upon which to infer that the impeaching witness has knowledge of the impeached witness’ general reputation.” C. Gamble, Character Evidence: A Comprehensive Approach 62-63 (1987).
The witnesses were asked if they knew the appellant’s reputation in the community for truthfulness. They also testified about how long they had lived in the community. A sufficient predicate was laid to allow the witnesses to give their opinion of the appellant’s reputation. Kilgore v. State, 124 Ala. 24, 27 So. 4 (1899) (sufficient predicate has been laid when witness is asked if he knows the person’s reputation). No error occurred here.
II
The appellant next argues that the trial court erred in limiting his cross-examination of the victim, Ronald Wright. Defense counsel attempted to ask the witness whether he had been convicted of three prior D.U.I. offenses. The appellant argues on appeal that the trial court erred by not allowing the witness to answer the question concerning prior D.U.I. convictions when the witness had testified that he abided by the rules of the road. If any error is present here, it is harmless. Rule 45, A.R.App.P. The victim admitted, during direct examination, that he had previously been arrested for reckless driving and for driving with a revoked license. Thus, evidence was presented that the victim had violated traffic laws. Because similar matters were already testified to by *146 the victim, this evidence would have been cumulative. “It is within the trial judge’s discretion to exclude evidence which is cumulative.” C. Gamble, McElroy’s Alabama Evidence § 10.07 (4th ed. 1991) and cases cited therein. The trial court did not abuse its discretion here.
Ill
Last, the appellant contends that there was insufficient evidence to find him guilty of disorderly conduct. According to § 13A-11-7, Code of Alabama 1975, an individual is guilty of disorderly conduct if:
“With intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
“(1) Engages in fighting or in violent tumultuous or threatening behavior; or
“(2) Makes unreasonable noise; or
“(3) In a public place uses abusive or obscene language or makes an obscene gesture; or
“(4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
“(5) Obstructs vehicular or pedestrian traffic, or a transportation facility; “(6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.”
Clearly the facts of the case present a jury question on the question of disorderly conduct. The witness to the events, Tammy Adams, stated that prior to the police’s arrival at the scene, the appellant shouted at her several times that it was none of her damn business. Adams also stated that she was scared of the appellant and that she waited to approach the appellant until police arrived. Officer Kaylor of the Moul-ton Police Department testified that when Adams was attempting to relay to him what had happened the appellant tried to stop the witness from talking by saying, “It [was] none of her shit’en business and it was none of her damn business.” Officer Kaylor also stated that the appellant said this in a very “belligerent” and “threatening” manner. There was sufficient evidence presented at trial to make the appellant’s guilt or innocence a jury question. The issue of the appellant’s guilt was correctly submitted to the jury for their determination.
AFFIRMED.
All the Judges concur.