**Paula CREAN, Plaintiff,**

v.

**MICHELIN TIRE CORP.,
et al., Defendants.**

**Civ. A. No. 95–A–367–S.**

United States District Court,
M.D. Alabama,
Southern Division.

June 29, 1995.

---

**22.** Pleading number 33, filed on January 11, 1995.

**23.** Pleading number 37, filed on January 13, 1995.

Stephen D. Heninger, Birmingham, AL, Joseph E. Sawyer, Jr., Enterprise, AL, for plaintiff.

Henry Clay Barnett, Jr., Montgomery, AL, Stephen F. Fisher, Greenville, SC, Stephen X. Munger, Atlanta, GA, for defendants.

## *MEMORANDUM OPINION*

ALBRITTON, District Judge.

### INTRODUCTION

This cause is before the court on Defendant's Motion to Dismiss, filed on March 23, 1995. The Defendant requested that the Motion be converted by the court to a Motion for Summary Judgment on April 17, 1995. On May 31, 1995, the court notified all parties of its intention to treat the Motion to Dismiss as one for Summary Judgment. Both parties have had the opportunity to submit further material in support of their positions, and both have gone outside their pleadings and have submitted evidentiary material.

Plaintiff brought suit in the Circuit Court of Dale County, Alabama, on or about February 14, 1995. Plaintiff alleged causes of action for fraud, for outrageous conduct, and for interference with contractual relations. The defendant removed the action to this court on March 16, 1995, pursuant to the court's diversity jurisdiction as set forth in 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b). Defendant is a foreign corporation incorporated

under the laws of New York with its principal place of business in South Carolina. The plaintiff is a citizen of Alabama. The plaintiff has asserted a claim for damages in excess of $50,000 and accordingly the court finds that jurisdiction is proper.

## FACTS

Plaintiff was, at all times pertinent to this matter, an employee of the defendant. She sustained what she claims are work related injuries in May of 1994, and began drawing disability payments under the terms of Michelin's disability plan. Plaintiff alleges that her injury qualifies her for workers' compensation benefits. The defendant contends that plaintiff is not eligible for workers' compensation. For the purposes of this motion, plaintiff's eligibility for compensation is not relevant.

Plaintiff's claim in the instant case is based on Michelin's decision to pay plaintiff through its disability plan rather than through workers' compensation. Plaintiff alleges that this resulted in her being compensated for her injuries in an amount less than she is legally entitled to. Additionally, plaintiff's eligibility for disability payments under the Michelin plan expires after twelve months, at which point the plaintiff may be terminated from her position at the company. In contrast, if plaintiff is eligible for workers' compensation benefits, these payments do not have an imposed term. In her complaint, plaintiff states that defendant has engaged in a "fraudulent and deceitful scheme in an attempt to avoid payment of required levels of compensation ..." Additionally, plaintiff contends that the defendant's actions were outrageous, and that defendant has abused the legal rights of the plaintiff in a manner intended to cause the plaintiff emotional and financial harm. Plaintiff has filed a separate action in state court asserting that she is entitled to benefits under workers' compensation.

The defendant contends that the plaintiff's exclusive remedy is provided in the workers' compensation statute, and that plaintiff's rights will be fully determined in the state court action. Defendant also contends that the plaintiff has failed to produce sufficient evidence to maintain a cause of action for fraud. Additionally, defendant asserts that the actions taken by those involved in the decision to contest plaintiff's claim for workers' compensation do not rise to the level of the tort of outrageous conduct. According to the defendant, it merely asserted its legal right to contest eligibility, and this cannot be construed as outrageous conduct.

## STANDARD

Under *Fed.R.Civ.P.* 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–53.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

*Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c).

## ANALYSIS

### A. Exclusivity

■ As noted by the Alabama Supreme Court in 1993, "The exclusivity provisions of the Alabama Workers' Compensation Act limit the liability of the workers compensation insurer to those claims prescribed under the statute for job-related injuries." *Gibson v. So. Guaranty Ins. Co.,* 623 So.2d 1065, 1066 (Ala.1993). The statute does "not 'shield an employer or its insurer from the entire field of tort law.'" *Id.* (quoting *Lowman v. Piedmont Executive Shirt Mfg. Co.,* 547 So.2d 90, 92 (Ala.1989)). However, it does bar most causes of action sounding in tort that are connected or related to a workers' compensation claim. The exceptions to the exclusivity provisions, as discussed below, are very limited.

### B. Fraud

■ A claim for fraud may be an exception to the workers' compensation exclusivity provision. In order to recover for fraud, the plaintiff must prove several elements. These are: that the defendant had a duty to speak the truth, that it made a false representation of a material fact, that this representation was relied upon, that the plaintiff suffered a loss or damage as a result of this reliance. *Smith v. Scott Paper,* 620 So.2d 976, 977 (1993). Although the Alabama Supreme Court has recognized that there exists a cause of action for intentional fraud that is not barred by the exclusivity provisions of the workers' compensation statute, the Court did so with hesitation. *Lowman,* 547 So.2d at 95. In *Lowman,* the Court wrote that

"[i]n order to insure against borderline or frivolous claims, we believe, in view of the exclusivity clause, that a plaintiff, in order

to go to the jury on a claim must make a stronger showing than that required by the 'substantial evidence rule' as it applies to the establishment of jury issues in regard to tort claims generally. See Code 1975, § 12–21–12. Therefore we hold that in regard to a fraud claim against an employer, a fellow employee, or an employer's insurer, in order to present a claim to the jury, the plaintiff must present evidence that, if accepted and believed by the jury, would qualify as clear and convincing proof of fraud." *Id.*

■ Plaintiff's claim for fraud appears to be based on an assertion that the defendant knew that the plaintiff had the right to workers' compensation benefits, but that defendant persisted in paying her through the disability plan, and contested her right to workers' compensation. Plaintiff in her fraud claim has not specified the statements or representations made by the defendant that were incorrect or misleading. Defendant denies any fraudulent dealings with the plaintiff and contends that its reason for contesting plaintiff's eligibility for workers' compensation is that it is unclear precisely what injury is keeping the plaintiff from working.

The evidence before the court is totally barren of any implication of fraudulent dealing by the defendant. The plaintiff's medical records show that it is not in fact certain which injury of the plaintiff's is preventing her from working. Plaintiff has presented nothing other than the bare assertion that the defendant knew that she was entitled to benefits and still contested her claim. This, standing alone, is not sufficient. As stated above, in order to get to the jury, the plaintiff must present evidence that, if believed by the jury, would be considered clear and convincing evidence of fraud. This is a difficult burden, one that plaintiff has failed to meet. Accordingly, Defendant's Motion for Summary Judgment as to the claim for fraud is due to be GRANTED.

### C. Outrageous conduct

■ This is another claim which may escape the workers' compensation exclusivity bar. The Alabama Supreme Court first rec-

ognized the tort of outrageous conduct in 1981. *American Road Service v. Inmon*, 394 So.2d 361 (Ala.1981). According to *Inmon*, in order for a plaintiff to prevail, he must show that "one who by extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress to another." *Id.* at 365. The person is subsequently liable "for such emotional distress and for bodily harm resulting from the distress." *Id.* However, as the court wrote in *Inmon*, the conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, as to be regarded as atrocious and utterly intolerable in a civilized society." *Id.*

■ The tort of outrageous conduct is therefore extremely limited. According to a recent Alabama Supreme Court case, "in the 12 years" since *Inmon* was decided, all cases in which this Court has found a jury question on an outrageous conduct claim have fallen within only three categories: 1) cases having to do with wrongful conduct in the context of family burials; 2) a case where insurance agents employed heavy handed, barbaric means in attempting to coerce the insured into settling an insurance claim; and 3) a case involving egregious sexual harassment. *Thomas v. BSE Industrial Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993) (citations omitted).

The tort of outrageous conduct has been recognized as appropriate in certain circumstances where an individual was denied payment under worker's compensation. *See Continental Casualty Ins. Co. v. McDonald*, 567 So.2d 1208 (Ala.1990). In *McDonald*, the insurance carrier engaged in a pattern of delays in paying its insured's claims. *Id.* at 1212. Mr. McDonald had suffered a back injury of such severity that his need for treatment was day to day. There was evidence that the insurance company delayed payments in order to coerce McDonald into a settlement that was grossly inadequate to his needs. *Id.* at 1212. There was also evidence that the delays in payment resulted in delays in treatment, seriously increasing the amount of physical pain endured by the insured. *Id.* at 1213. There are repeated references in the case to McDonald's possible addiction to

narcotic pain killers as a direct result of Continental's actions. *Id.* at 1213, 1214. It therefore appears in *McDonald* that the company not only had no lawful reason to contest payments, but also contested payments in a manner intended to cause pain and suffering to the insured, in order to coerce him into a settlement. *Id.* at 1220.

The facts in *McDonald* are particularly egregious, and clearly warranted allowing a jury to determine liability for outrageous conduct. However, there have been several other cases in the Alabama Supreme Court that address the issue of the tort of outrageous conduct in the context of worker's compensation with facts more similar to the matter before the court. *See Gibbs v. Aetna Cas. & Sur. Co.*, 604 So.2d 414 (Ala.1992); *Wooley v. Shewbart*, 569 So.2d 712 (Ala. 1990). In *Gibbs*, there was evidence that the insurance company intentionally understated the insured's average weekly wage in order to lower his benefit level *Gibbs*, 604 So.2d at 416. The court ruled that Aetna advanced "arguable reasons" for its actions, and that therefore the plaintiff could not maintain a claim for outrageous conduct. *Id.* *Wooley* involved the unjustified denial of a claim by the insurance company just prior to a scheduled surgical procedure. *Wooley*, 569 So.2d at 717. The court found that this timing, although perhaps unfortunate, did not rise to the level of outrageous conduct. *Id.*

■ Based on these cases as well as *McDonald*, it is clear that the conduct of the defendant did not rise to a level necessary to sustain a cause of action for outrageous conduct. In this case there is evidence that Michelin has a legal right to contest payment to the plaintiff. As stated by the Supreme Court of Alabama in another workers' compensation case, "The tort of outrage cannot exist as a matter of law where the Defendants are merely insisting on their legal rights in a permissible way." *Moore v. Spiller Furniture, Inc.*, 598 So.2d 835, 836 (Ala. 1992). Additionally, although plaintiff believes she is entitled to more money than she currently receives, she has not been cut off by Michelin, and continues to receive disability payments. A verdict in her favor in her

state court action would presumably remedy this potential wrong.

Finally, there is no indication that the level of her injury is such that she requires the type of medical attention necessary in *McDonald*, and in any event it appears that all of her medical expenses have been paid for by insurance. Therefore there is no evidence that the plaintiff is in a position that is likely to make her more susceptible or vulnerable to emotional distress as a result of the defendant's actions. Ms. Crean may believe that Michelin has an obligation to pay her workers' compensation, and this may well be so, however, it is equally true that the facts of this case are not so egregious as to rise to the level of outrageous. Based on all the evidence before the court, Michelin is merely pursuing its legal right to contest benefits, an action that courts have repeatedly held does not rise to the level of outrageous conduct. Given the uncertain nature of the facts surrounding the plaintiff's injury, this seems reasonable.

*D. Interference with Contract*

As stated above, the only causes of action recognizable in tort as exceptions to workers' compensation being an exclusive remedy are fraud and the tort of outrageous conduct. The plaintiff's claim for interference with contract is therefore barred by the exclusivity provisions of the workers' compensation statute. Ala.Code § 25–5–1, *et seq.* (1975); *See Gibson v. So. Guaranty Ins. Co.*, 623 So.2d 1065, 1066 (Ala.1993). Accordingly, that claim is due to be dismissed.

### CONCLUSION

For the reasons set forth above, the court finds that the Defendant's Motion for Summary Judgment is due to be GRANTED. The court will enter a separate order consistent with this opinion.